UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOHN KRAUSE                                                              PLAINTIFF

V.                        NO. 2:16CV00141-JTR

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                           DEFENDANT

## ORDER

**I.    Introduction:**

Plaintiff, John Krause, applied for disability benefits on August 7, 2014, alleging an onset date of July 7, 2014. (Tr. at 13). His claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Krause's application. (Tr. at 22). The Appeals Council denied his request for review (Tr. at 1), thereby making the ALJ's decision the final decision of the Commissioner. Krause has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.    The Commissioner's Decision:**

The ALJ found that Krause had not engaged in substantial gainful activity

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since the alleged onset date of July 7, 2014. (Tr. at 15). At Step Two, the ALJ found that Krause has the following severe impairments: lumbar degenerative disc disease with radicular pain down the left leg and hip (status post discectomy) and depression. *Id*.

After finding that Krause's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Krause had the residual functional capacity ("RFC") to perform sedentary work, except that: (1) he can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; (2) he can stand and/or walk in intervals of 10 minutes for two hours in an eight-hour work period; (3) he can sit in intervals of 20-30 minutes for six hours in an eight-hour work period; (4) he can push and/or pull 10 pounds occasionally and less than 10 pounds frequently; (5) he can stoop so as to reach knee level or tabletop level; (6) he can understand, remember, and carry out simple job instructions and make judgments in simple work-related situations; and (7) he can respond appropriately to co-workers/supervisors and respond appropriately to minor changes in usual work routine. (Tr. at 17).

Next, the ALJ found that Krause was not capable of performing past relevant work. (Tr. at 20). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Krause's age, education, work experience and

RFC, jobs existed in significant numbers in the national economy that he could perform, specifically production assembler and document preparer. (Tr. at 21). Based on that determination, the ALJ held that Krause was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

#### B. Krause's Arguments on Appeal

Krause contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ erred in finding Krause less than credible; and (2) the ALJ ignored relevant medical evidence. The Court agrees that

3

the ALJ made several errors and therefore, his decision was not supported by substantial evidence.

Krause suffered long-term pain in his back, which did not fully resolve, even after Dr. John Campbell, M.D., performed a right L5-S1 discectomy and laminectomy in May 2010. (Tr. at 388-399). An MRI from just before the surgery showed a focal disc extrusion at L5-S1 which was effacing the thecal sac and displacing the right nerve root laterally. (Tr. at 377-378). An MRI from June 2010 showed multiple levels of chronic degenerative posterior facet joint effusions with no significant nerve root impingement. (Tr. at 387). At a January 24, 2011 visit with Dr. Campbell, Krause complained of a debilitating burning sensation in his right leg. (Tr. at 408). Straight-leg raise was positive on the right and quite painful. *Id*. Dr. Campbell found right S1 radiculopathy and recurrent right L5-S1 herniation. *Id*.

A February 2011 MRI of the lumbar spine showed mild epidural fibrosis surrounding the right S1 nerve root. (Tr. at 385, 406-407).

After an April 11, 2014 car accident, physical examination showed abnormal appearance of the lumbar spine, tenderness on palpation, muscle spasms, and some pain on range of motion. (Tr. at 310-311). Gait and stance were abnormal and Krause was using a cane. *Id*. He was prescribed Ibuprofen 800 mg and Cyclobenzaprine. *Id*.

Krause saw Dr. Prasad Athota, M.D., on April 18, 2014. (Tr. at 308-310). He

exhibited tenderness to palpation, muscle spasm, and abnormal motion in the lumbar spine. *Id*. Assessment was lumbar disc degeneration and thoracic neuritis. *Id*. Dr. Athota gave Krause an injection of Toradol for pain and prescribed Norco. *Id.*

On May 21, 2014, Krause underwent an MRI that showed degenerative disc disease, most pronounced at L5-S1, and a small disc bulge with moderate to marked foraminal narrowing. (Tr. at 301-302). Upon further complaints of pain in June 2014, Dr. Athota referred Krause to a pain specialist and renewed his prescription for Norco. (Tr. at 307-308).

On June 28, 2014, Krause saw Dr. Sunil Gera, M.D., a pain specialist. (Tr. at 348-350). He reported increasing pain with daily activities. *Id*. His lateral bending and extension were severely restricted and straight-leg raise and Patrick's test were positive. *Id*. Dr. Gera diagnosed low back pain, lumbar spondylosis, facet arthropathy in the lumbar area, hip pain, sacroilitis, and lumbar degenerative disc disease. *Id*. Dr. Gera proceeded with medial nerve branch blocks. *Id.* Krause returned to Dr. Gera on July 30, 2014 and said that the branch blocks and pain medication were not helping. (Tr. at 346-347). Dr. Gera administered another block and prescribed Vicodin and Diclofenac for pain. *Id.*

Krause returned to Dr. Gera on September 23, 2014 with more pain in the lumbar area, as well as the hip area. (Tr. at 364-367). Range of motion was

5

moderately limited. *Id*. Straight-leg raise was negative but Patrick's test was positive. *Id*. Dr. Gera proceeded with another branch block and radiofrequency neurolysis, and he renewed Krause's pain medication prescriptions. *Id*. On October 17, 2014, Krause reported to Dr. Gera that the radiofrequency neurolysis made him 40-50% better, but the branch block only gave him relief for four hours. (Tr. at 362-363). Dr. Gera injected Krause's left SI joint. *Id*. Dr. Gera injected Krause's left SI joint again on November 19, 2014 and performed radiofrequency neurolysis on December 30, 2014. (Tr. at 360-361).

Krause told Dr. Gera on January 14, 2015 that he was much better. However, he still had hip pain and Patrick's test was strongly positive on the right. (Tr. at 358-359). There was severe tenderness in the SI joint and Dr. Gera performed a right SI joint injection. *Id*. On April 13, 2015, after Krause reported no more back pain, Dr. Gera discharged him from care. (Tr. at 432). However, the pain would return.

On July 7, 2015, Dr. Athota found tenderness to palpation in the lumbar area, as well as muscle spasm. (Tr. at 426-428). He prescribed Norco and Diclofenac and referred Krause back to Dr. Gera. *Id*. At an August 5, 2015 appointment, Dr. Gera found that Krause had severely restricted lumbar extension and moderately restricted flexion and lateral bending. (Tr. at 431). Patrick's test showed severe bilateral hip pain. *Id*. There was severe spasm and tenderness in the lumbar area. *Id*. Dr. Gera

6

administered an SI joint injection and a medial nerve branch block. *Id*. Dr. Gera proceeded with radiofrequency neurolysis on September 9, 2015. (Tr. at 430-453).

Krause complained of pain on January 6, 2016 and Dr. Gera recommended physical therapy, which Krause undertook. (Tr. at 38, 43). Dr. Gera also prescribed Diclofenac and Robaxin. *Id*.

Krause again had a positive straight-leg raise on March 8, 2016 with worsening pain extending down his left leg. (Tr. at 37). Pain was increased with extension, flexion, and lateral bending. *Id*. Dr. Gera proceeded with an L4-L5 and L5-S1 transforaminal injection and told Krause not to do any bending or twisting or lift any heavy weights. *Id*. He prescribed Neurontin, Diclofenac, and Robaxin. *Id*.

The ALJ did not appear to believe Krause's complaints of pain despite the substantial medical record supporting his testimony. The ALJ's medical review only mentioned five doctor visits in four short paragraphs, leaving out substantial sections of the relevant medical record described above. The ALJ seemed to assume that some intermittent improvement solved Krause's back problems. An ALJ must give some weight to the complete longitudinal medical history documenting a claimant's persistent, long-term problems with back pain. A consistent diagnosis of chronic pain, coupled with a long history of pain management and drug therapy, supports a finding of disability. *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

7

The ALJ noted that Krause "tried to reduce his use of hydrocodone in spite of the allegations of quite limiting pain." (Tr. at 19). This persuaded the ALJ that Krause was exaggerating his pain. The ALJ neglected to account for prescriptions of Norco, Neurontin, Diclofenac, Robaxin, and Vicodin. He also overlooked the aggressive course of injections, medial nerve branch blocks, and radiofrequency neurolysis. Krause pursued all possible pain relief, his complaints were consistent, and there were no gaps in treatment. Add to that several positive straight-leg raises and Patrick's tests and marked abnormalities on multiple MRIs, and there is ample evidence to support Krause's testimony of disabling pain. *See O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003) (ALJ improperly discredited claimant in spite of aggressive treatment).

The ALJ also gave other entirely subjective reasons for doubting Krause's pain. For example, in his decision, he stated that Krause did not seem uncomfortable at the hearing, and declined an opportunity to stand. (Tr. at 19). First, a claimant's failure to "sit and squirm" with pain during a hearing cannot be dispositive of his credibility. *Muncy v. Apfel*, 247 F.3d 728, 736 (8th Cir. 2001). And, secondly, Krause did indicate at the hearing that he had to change position and support himself with his hand. (Tr. at 54, 68).

Finally, the ALJ wrote that Krause was inconsistent in his statements because

8

he said he does not drive, but admitted to driving in his function report. (Tr. at 19). Krause in fact said that his wife usually drives him, but every now and then he may drive to the store. (Tr. at 64-65, 266). Fairly construed, Krause's statements fall far short of unequivocal evidence he intentionally tried to mislead the ALJ.

The ALJ's reasons for discounting Krause's credibility do not stand up under applicable Eighth Circuit case law and a fair construction of the record. Similarly, the ALJ's failure to credit the extensive evidence of Krause's aggressive treatment, which directly supports his testimony about disabling pain, constitutes reversible error.

## IV. **Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ did not properly credit the medical evidence or Krause's complaints of pain.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 8th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE